## KANSAS CITY SOUTHERN R. CO. v. HURLEY.

No. 8045—Opinion Filed Oct. 31, 1916.

Rehearing Denied Nov. 14, 1916.

(160 Pac. 910.)

**1 Waters and Water Courses—Flowage—Care Required.**

. Where a railway company attempts to alter the course of the natural drainage of a tract of land, it must. provide sufficient means for the escape of the flow of such water, and where it attempts to gather up the water into ditches, it must care for it so that it will not do injury to an abutting landowner greater than would have resulted had it not interrupted the natural drainage.

**2. Evidence—Opinion Evidence—Damages.**

In an action for damages against a railway company, the court, over objections. permitted witnesses to testify as to the amount of damages the plaintiff had sustained. Held, error; that the witness should have been required to state the facts, and not conclusions as to the amount of such damage.

**3. Damages — Measure — Destruction of Property—Market Value.**

The measure of damages for the destruction of property is its reasonable market value at the time and place of its destruction. but if the property had no market value at the time and place, then its value in view. of the use to which it was to be put may be recovered.

(Syllabus by Galbraith, C.)

Error from District Court, Sequoyah County; John H. Pitchford. Judge.

Action by W. E. Hurley against the Kansas City Southern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

Jas. B. McDonough, for plaintiff in error.

Jos. I. Pitchford, for defendant in error.

Opinion by GALBRAITH, C. The defendant in error, W. E. Hurley, sued the Kansas City Southern Railway Company for damages charged to have been caused by the overflow of surface water. It was charged in the petition that the plaintiff owned lot 3, block 25, in the town of Gans, Sequoyah county, Okla., that he built his home there, made the improvements, and resided there for a number of years, and that the railway company changed the natural drainage of the lot without making proper provision for the escape of the surface water, and thereby caused the same to overflow to the plaintiff's property, to his damage in the sum of $878. The jury returned a verdict for $600, and a judgment was rendered thereon.

There are 52 assignments of error in the petition in error. It will not be necessary to consider these in detail. It is sufficient to say that, although the company denied responsibility for the damage, there was competent evidence tending to show that it was liable. But there was no competent evidence to show the amount of the injury sustained by reason of the overflow. The controlling rule of law has been announced as follows:

"If a railroad attempts to alter the course of a natural drainage of a tract of land, it must provide sufficient means for the escape of the overflow of such water. If the railroad company attempts to gather up the water in the ditches, it is bound to care for it so that it will not do an injury to the abutting owner." Kelly et al. v. Kansas City Southern Railway Co., 92 Ark. 465, 123 S. W. 664.

This rule has been approved by this court in the following cases: C., R. I. & P. R. Co. v. Groves, 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802, 16 Ann. Cas. 56; Town of Jefferson v. Hicks, 23 Okla. 688, 102 Pac. 79, 24 L. R. A. (N. S.) 214; C., R. I. & P. R. Co. v. Johnson, 25 Okla. 762, 107 Pac. 662, 27 L. R. A. (N. S.) 879; C., R. I. & P. R. Co. v. Davis, 26 Okla. 434, 109 Pac. 214; Gulf, Colorado & S. F. R. Co. v. Richardson, 42 Okla. 457, 141 Pac. 1107; Wichita Falls & N. W. R. Co. v. Stacey, 46 Okla. 8, 147 Pac. 1194.

The character of the evidence given in support of the claim for damages is illustrated by the following:

"Q. Well, Mr. Hurley, what was the amount of damage to your house? (Objected to as not the proper way to prove the measure of damages. Overruled.) A. (witness continuing). Well, I figured close on the damages; it was $250 the way I figured it out— to the house. Q. What do you consider the amount of damages which were sustained by reason of this overflow on your lot? (Objected to and overruled.) Q. Answer the question. A. Well, I hardly know without itemizing it. The Court: That is the way to reach it; itemize it. Witness: Well $250 for the house, $100 for the cellar, $100 for the well, and the potatoes I had were ruined. Q. How much were you damaged by reason of the loss of your potatoes? A. I had a market price on that day of $87.50 on the potatoes that were ruined. They were in the cellar, and they rotted. Then I had $25 worth of canned fruit in there that was broken. Q. Were there any outhouses that were damaged? A. Yes, sir; I had a barn and outhouse. Q. What do you figure the damage was on the outhouse? A. Well, something like $25 on the other place. * * * Q. Were you damaged in any other respect by reason of this overflow? A. Yes, sir: Q. What manner? A. Well, the inconvenience we have been out. We have had to carry water ever since this happened for one block. * * * Q. Mr. Hurley, outside of the cellar and well and outhouse, has your lot been damaged in any manner? A. Yes, sir; damaged for this year; we were unable to have a garden. Q. What do you consider the reasonable damage done to your lot, aside from the cellar and the well and the outhouse, because of this overflow? * * * A. I would say $50. Q. Of what does that consist? A. It consists of being without a garden and the stench that was left on my lot. Q. Were you compelled to do anything to keep down the stench? A. Yes, sir. Q. What did you do? A. I used lime there for two or three weeks; I used two barrels under the house and on the lot."

In Tootle et al. v. Kent et al., 12 Okla. 674, 685, 73 Pac. 310, 313, the court, in considering this character of testimony, said:

"This method of proving damages was clearly erroneous. The witness should have been required to state the facts, and not his conclusions, as to the amount of damages he had sustained. He should have been permitted to state the condition, quality, and value of the goods. If any of the goods were destroyed or injured in any respect, that should have been shown. * * * The jury should have been allowed to draw the conclusion from these facts as to the amount of damages that the plaintiff had sustained in that respect."

In C., R. I. & P. R. Co. v. Teese, 42 Okla. 188, 140 Pac. 1166, 52 L. R. A. (N. S.) 167, the court said in regard to this character of testimony:

"It is apparent that this testimony was not as to a fact, but as to a conclusion. In an action of this character, the plaintiff would be allowed to state facts showing the extent of the damages and other pertinent matters, but it was error for the court to allow the plaintiff to measure his damages in dollars and cents. Such testimony could only be conclusions of the witness and an invasion of the duties belonging to the jury."

A large number of authorities to the same point are collated in this opinion.

In Wichita Falls & N. W. R. Co. v. Gant, 56 Okla. 727, 156 Pac. 672, the third paragraph of the syllabus reads:

"The measure of damages for the destruction of property is the reasonable market value of the same at the time it was destroyed; but, if it has no market value, then its value in view of the use to which it was to be put may be recovered."

See, also, Chicago, R. I. & P. R. Co. v. Quigley, 57 Okla. 260, 156 Pac. 669.

It is apparent from the record that the plaintiff below sustained damages by reason of this overflow. It is equally apparent that no proper evidence was offered to the jury to enable them to estimate and determine the amount of such damages. They were given the conclusion of the witness whose testimony is set out above, and of one or two other witnesses who gave the same character of testimony. These witnesses were not qualified as experts, and did not pretend to give expert testimony. They simply gave their conclusions as to the amount of damages. This was a matter entirely within the province of the jury to determine. The witness should have testified as to the facts, the particular kind of property that the plaintiff owned, and how it was injured by this overflow. The fact that none of the injured property except the potatoes had a market value at Gans was no reason why each item of the property could not have been described and its use given, and how its usable value had been lessened by reason of the water. If the witnesses had described the property and its use and had related in what way each item had been injuriously affected by reason of the water, the jury would have had some reasonable basis upon which to form a judgment as to the extent of the injury and proper means of estimating the amount of damage. Under the character of evidence given the jury was compelled to guess that the conclusion of the witnesses as to the amount of damage was correct. There is too much hazard and want of accuracy in this method of reaching a judgment to allow property to be taken from one and given to another by means of it.

On account of the character of the testimony admitted in support of the claim for damages, the judgment appealed from is reversed, and the cause remanded, with directions to the trial court to grant a new trial.

By the Court: It is so ordered.