GOFORTH v. SMITH et ux.

No. 34957.   April 29, 1952.

*244 P. 2d 304.*

R. Place Montgomery, Hobart, for plaintiff in error.

Fred Cunningham, Hobart, for defendants in error.

GIBSON, J. This is an action by J. S. Smith and Maggie M. Smith against

Ray Goforth to recover damages for alleged breach of an oral contract for the rent of farm lands, damages for destruction of terraces placed on the land causing some permanent damage to the land, and damages for breach of a grazing contract.

Plaintiffs in their petition alleged, and evidence offered in their behalf tends to establish, that they had rented the land in question to Loyd Bourne for the years of 1948 and 1949; that Bourne sowed a wheat crop on the land consisting of 180 acres in the fall of 1948; that only 120 acres thereof produced a crop; that Bourne in the early part of February, 1949, sold the wheat crop to defendant herein; that thereafter defendant entered into an oral contract with plaintiffs whereby he agreed to rent the land for that year and agreed to plant 60 acres of cotton thereon; that he agreed to pay as rent one-third of the wheat and one-fourth of the cotton grown on the land free of costs to plaintiffs; that the wheat crop had matured and was ready to harvest in the early part of June, 1949; that plaintiff J. S. Smith informed defendant of this fact and demanded that he proceed at once to harvest the crop; that defendant refused to do so; that he did not appear to harvest the crop until June 30, 1949; that prior thereto and subsequent to the 15th day of June, 1949, there was a heavy rainfall which damaged the crop but still the crop would have yielded a sufficient amount of wheat to pay for harvesting the crop. Evidence has also been offered tending to show that defendant neglected and refused to plant any cotton on the land as he agreed to do but that defendant plowed part of the land with the intent of planting it to cotton; that in so doing defendant plowed across terraces on the land and completely destroyed them, causing damage to their land. Plaintiff also testified that prior to the time he rented the land to defendant he entered into an oral contract with defendant whereby defendant agreed to pasture 25 head of cows and 25 head of calves on the land beginning April 1, 1949, until the end of the season; that defendant agreed to pay for such pasturage $3 per head per month for the cows and $1 per head for the calves; that he failed to comply with such contract; that defendant only pastured about 17 head of cows and 8 head of calves during the year 1949, and that by reason of defendant's failure to pasture the number of cattle he agreed to pasture, plaintiffs suffered loss in the sum of $189.

Defendant admits in his testimony that he purchased the wheat crop from Mr. Bourne who had then rented the land from plaintiff and that he thereafter entered into an oral contract with plaintiffs to rent the land from them, but testified that plaintiffs also agreed to rent the land to him for the year 1950; admits that he did not harvest the wheat crop for the year 1949, but the reason that he failed to do so was because the crop had been so damaged by reason of cold and rainy weather that the wheat crop was completely destroyed and no wheat was produced on the land. Defendant denied that he ever entered into a contract with plaintiffs to plant cotton on the land. He testified he informed plaintiffs that he had other land which he rented and which he intended to plant in cotton, and stated that if he found time to plant any of plaintiffs' land to cotton he would do so. He testified that he did plow some of the land with the intention of planting it to cotton but that in so doing he did not plow across and destroy the terracing on the land, as testified to by plaintiffs. He also denied that he entered into a contract with plaintiffs to pasture any defniite number of cattle on plaintiffs' pasture land. He testified the agreement was that he would pasture as many head of cattle as the pasture would accommodate; that he did pasture 17 head of cows and 8 head of calves and that the pasture was not sufficient to pasture an additional number of cattle.

This, in substance constitutes the evidence offered in the case except as to

damages sustained, which question we shall later discuss.

The trial was to a jury, resulting in a verdict in favor of plaintiffs in the sum of $669. Judgment was entered on the verdict. Defendant appeals, and relies for reversal on the admission of incompetent evidence as to the damages sustained and error in instructing the jury as to the measure of damages. As to the damages sustained, plaintiff J. S. Smith testified that if defendant had harvested the wheat it would have made 12 or 12½ bushels to the acre and by reason of the failure of defendant to harvest the wheat plaintiffs were damaged in the sum of $1,000, but that in their petition they only asked for damages in this respect in the sum of $800. As to the damage for failure to plant the cotton he testified that if the cotton had been planted it would have made from three-fourths of a bale to a bale per acre and that because of defendant's failure to plant the cotton plaintiffs were damaged in the sum of $1,200, and that because of the destruction of the terraces some permanent damage was caused to their land and they were damaged in this respect in the sum of $500. All of this evidence was admitted over the objection of defendant on the ground that it called for a conclusion of the witness and invaded the province of the jury. This objection should have been sustained. This witness testified to no facts from which damages could have been computed. He merely gave his estimate without any facts upon which to base such estimate as to the amount in which plaintiffs were damaged in these respects. This is the only evidence offered by plaintiffs to prove damages. The trial court committed prejudicial and reversible error in admitting this testimony. Kansas City Southern R. Co. v. Hurley, 61 Okla. 241, 160 P. 910; Empire Oil & Refining Co. v. Webb, 178 Okla. 241, 62 P. 2d 652.

It is further contended by defendant that the court erred in its instruction to the jury as to measure of damages.

Since the case must be reversed and a new trial granted because of the admission of incompetent evidence, it probably would not be necessary to pass upon this assignment; however, since the case must be retried we think it proper to do so.

The measure of damages for failure to harvest the wheat crop is the value of the crop at the time it should have been harvested. H. F. Wilcox Oil & Gas Co. v. Murphy, 186 Okla. 188, 97 P. 2d 84. The court, in substance, gave this instruction. Defendant, however, contends the instruction was not complete. It is his contention that the court should have charged the jury that the value of the crop should be arrived at by establishing the probable yield thereof, the market value at the nearest market at maturity less cost of cultivation and transportation to market. This rule cannot be applied to the facts in the case at bar in so far as it relates to the cost of cultivation and harvesting. This is an action by landlords against a tenant for failure to harvest the crop. The evidence in this case conclusively shows that defendant agreed to deliver to plaintiffs one-third of the wheat produced and harvested on the land free of cost to them. Defendant was not, therefore, entitled to decrease damages by showing the cost of cultivation and cost of harvesting as he was bound to cultivate the land and pay cost of harvesting under his rental contract. Plaintiffs were entitled to recover, in the event they prevailed, the actual damages they sustained because of defendant's failure to harvest the crop. Under 23 O. S. 1951 §21, the measure of damages for breach of contract is the amount which will compensate the party aggrieved for all the detriment sustained by him.

The measure of damages for failure to plant the cotton crop is the rental value of the land during the remainder of the season in which the cotton should have been planted. Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822.

The measure of damages for permanent injury to land is the difference in the value of the land immediately before and immediately after the injury. Avery v. Wallace, 98 Okla. 155, 224 P. 515; Texas Co. v. Harrison, 193 Okla. 185, 141 P. 2d 802. The court should have so specifically instructed.

Judgment reversed and cause remanded for a new trial.

HALLEY, V. C. J., and DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. CORN, J., dissents.